NUMBER
13-09-00341-CR

 

COURT
OF APPEALS

 

THIRTEENTH
DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JUAN EFRAIN FLORES
ROBLES,                                   Appellant,

 

v.

 

THE STATE OF TEXAS,                                                      
Appellee.

 

 



On
appeal from the 332nd District Court

of
Hidalgo County, Texas.

 

 



MEMORANDUM
OPINION  

 

Before
Chief Justice Valdez and Justices Rodriguez and Garza

Memorandum Opinion by Chief Justice Valdez

 

            A jury found appellant, Juan
Efrain Flores Robles, guilty of murder, and his punishment was assessed at imprisonment
for a term of 31 years and a fine in the amount of $10,000.  See Tex. Penal Code Ann. § 19.02(b)(1)
(West 2003).  Appellant now challenges his conviction based on the legal and
factual insufficiency of the evidence and ineffective assistance of counsel. 
For the reasons set forth below, we affirm.  

I. Background

            In the early morning hours of
March 9, 2008, appellant and three companions were sitting in a vehicle parked
outside a bar in McAllen, Texas, when they attracted the attention of two bar
patrons exiting the establishment.  Appellant, who was driving the vehicle,
initiated a verbal exchange with the patrons, brothers Jorge and Jaime Cano.  As
the Cano brothers walked away, appellant put his vehicle in reverse and drove
backwards to follow them and continue the exchange.  Appellant and Rafael
Rodriguez, a passenger sitting in the backseat behind appellant, were both
armed with handguns and holding the weapons in their laps as the verbal
confrontation escalated.  A physical altercation quickly erupted between the
two groups of men.  During the struggle, appellant was punched in the face. 
Immediately thereafter, appellant’s weapon and the weapon carried by Rafael
Rodriguez were discharged from within the vehicle, which then sped away from
the parking lot.  Jorge Cano was struck by two bullets and died shortly
thereafter.  Jaime Cano was struck by one bullet and survived with minor
injuries.  

            Several days later, after
receiving a Crime Stoppers tip, the McAllen Police Department obtained arrest
warrants for appellant and Rafael Rodriguez and search warrants for a house and
an apartment used by appellant and others.  Inside the house, police found two
full boxes of 9mm ammunition.  One live round was found outside the house next
to the driveway.  In the apartment, police found three handguns and a rifle.  Examination
of the recovered firearms in conjunction with fragments of a single bullet
recovered from Jorge Cano during his autopsy eliminated all but one of the
firearms as the weapon that could have fired the fatal shot.  Based on the
particular lands and grooves on the bullet, the State’s expert witness
testified that the shot could have been fired only from a Hi-Point 9mm handgun,
such as the one police found while executing the search warrant at the
apartment.  The expert was not able to make a conclusive determination that the
gun found by police was in fact the gun used to kill Jorge Cano; however, the
gun could not be ruled out as the murder weapon.  

II. Sufficiency of the Evidence

            In issues one and two, appellant
challenges the legal and factual sufficiency of the evidence to support his
conviction for murder.

A. 
Standard of Review and Applicable Law

In 2010, the Texas Court of
Criminal Appeals issued the Brooks decision, which abolished the
distinction between challenges to the legal and factual sufficiency of the
evidence. See Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App.
2010).  The decision states that “the Jackson v. Virginia legal
sufficiency standard is the only standard a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the state is required to prove beyond a reasonable
doubt.”  Id.  In light of Brooks, this Court will conduct only a
legal sufficiency review.

When conducting this
sufficiency review, the appellate court must ask itself “whether, after
reviewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt” and not whether it believes the evidence
establishes the verdict beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318-19 (1979).  “[T]he jury is the sole judge of a witness’s
credibility[] and the weight to be given the testimony.”  Lancon v. State,
253 S.W.3d 699, 707 (Tex. Crim. App. 2008).  The reviewing court should not act
as a thirteenth juror that substitutes its own opinion of the credibility and
weight of the evidence for that of the fact finder’s.  See Brooks, 323
S.W.3d at 905.  Instead, the reviewing court must “resolve inconsistencies in
testimony in favor of the verdict” and then ask whether a rational trier of
fact could have found the elements of the crime beyond a reasonable doubt.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

We measure the legal
sufficiency of the evidence based on the elements of the offense as defined by
a hypothetically correct jury charge.  Villarreal v. State, 286 S.W.3d
321, 327 (Tex. Crim. App. 2009).  “Such a charge is one that accurately sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.”  Id.  A person commits murder if he “intentionally
or knowingly causes the death of an individual . . . .”  Tex. Penal Code Ann. § 19.02(b)(1).

It is not necessary that the
evidence directly proves the defendant’s guilt; “[c]ircumstantial evidence is
as probative as direct evidence in establishing the guilt of the actor, and
circumstantial evidence alone can be sufficient to establish guilt.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); see Kuciemba v. State,
310 S.W.3d 460, 462 (Tex. Crim. App. 2010). “Circumstantial evidence alone may
[also] be used to prove that a person is a party to an offense.”  Powell v.
State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006) (citations omitted); Escobar
v. State, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref’d). 
A fact finder may support its verdict with reasonable inferences drawn from the
evidence, and it is up to the fact finder to decide which inference is most
reasonable.  Laster v. State, 275 S.W.3d 512, 523 (Tex. Crim. App.
2009).

B. 
Discussion

Appellant argues that there
was no evidence to prove that he fired the fatal shot that killed Jorge Cano. 
Appellant also argues that there was no evidence that he acted with a conscious
desire to cause Jorge Cano’s death or that his conduct was reasonably certain
to cause his death.  According to appellant, while the evidence showed that his
gun was fired during the scuffle with Jorge Cano, this “does not necessarily
support or prove the requisite intentional element to satisfy the homicide
statute.”  The mere intent to pull the trigger of the handgun, appellant
argues, “does not establish a conscious objective or desire that death should
result as is required for a conviction of murder.”  Id. (citing Morrow
v. State, 753 S.W.2d 372 (Tex. Crim. App. 1988); Kinnamon v. State,
791 S.W.2d 84 (Tex. Crim. App. 1990)).  

Appellant is correct in
asserting that intentional murder under penal code section 19.02(b)(1) is a
“result of conduct” offense; “that is to say, not only must an accused be found
to have intended to engage in the act that caused the death, he must also have
specifically intended that death result from that conduct.”  Morrow, 753
S.W.2d at 376 n.3.  Furthermore, as appellant argues, evidence that appellant
“intentionally pulled the trigger of a firearm . . . does not facially
establish a conscious objective or desire that death should result.”  Id.  
Nevertheless, based on our review of the record, the evidence was sufficient to
prove that appellant intentionally caused the death of Jorge Cano.  

We begin with the
uncontroverted evidence, including appellant’s statement to police that placed
appellant in the driver’s seat of his vehicle in the parking lot at the time of
the shooting.  Although appellant did not admit to having a role in the
shooting, he told police that he was there when it happened and that he was
punched in the face by one of the Cano brothers.  

Other uncontroverted
evidence established that appellant was displaying a black handgun during the
fatal encounter with the Cano brothers.  Jaime Cano testified to seeing
appellant sitting in the driver’s seat of the vehicle and holding a black
handgun.  Upon seeing the gun, Jaime Cano hit appellant in the face, causing
appellant to bleed from his nose.  Afterward, Jorge Cano pushed Jaime Cano toward
the rear door of appellant’s vehicle.  At that time, Jaime Cano observed Rafael
Rodriguez with a chrome-colored handgun and made an unsuccessful attempt to
take the gun away from him before the vehicle sped away.  Jaime Cano did not
hear any gunshots and did not notice that Jorge Cano was lying on the ground,
dead from gunshot wounds, until after appellant and his companions had left the
scene.  It was not until paramedics arrived some time later that Jaime Cano realized
that he too had been shot.  

In addition to the testimony
of bystanders who witnessed the shooting, the State offered statements made by
two of the passengers in appellant’s vehicle.  Zayra Barrera, who was sitting
in the front passenger seat, told police that she saw appellant pull out a gun
and fire two shots.  Carmen Cantu, who was sitting in a rear passenger seat, testified
at trial that she saw appellant holding a black handgun and heard him fire two
shots from where he was sitting in the front of the vehicle.  Cantu also saw Rafael
Rodriguez, who was sitting next to her, holding a chrome-colored handgun and
heard him fire one shot.  

Witnesses for the State
testified about the police search of appellant’s vehicle, which revealed damage
to the driver’s side window consistent with a bullet trajectory, as well as blood
inside and outside of the vehicle.  Forensic testing was used to match blood
found on the outside driver’s door handle with Jorge Cano’s DNA.  Blood found
on the outside of the driver’s door was matched with appellant’s DNA.   In
addition, appellant’s blood and the blood of an unknown second person were
found on the black Hi-Point 9mm recovered by police during their search of the
apartment used by appellant.   

The forensic pathologist who
performed the autopsy on Jorge Cano testified that the cause of death was
determined to be gunshot wounds to the head and torso.  Examination of the body
revealed gunpowder burns on the victim’s face, right arm, and right hand,
indicating that the shots were fired from within two feet of the victim.  There
were no powder burns to indicate that the victim was holding the gun when it
was fired.  

As is often the case, the
evidence of appellant’s intent is circumstantial.  See Guevara v. State,
152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (“[T]he lack of direct evidence is not
dispositive of the issue of a defendant’s guilt.  Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor.”); Turner
v. State, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980) (“[T]he Court has
consistently held that knowledge and intent can be inferred from conduct of,
remarks by and circumstances surrounding the acts engaged in by an accused . .
. .”).  In challenging the sufficiency of the evidence, appellant has
contrasted intent to pull the trigger of a firearm with intent to cause death,
arguing that the former does not establish the latter.  Although this proposition
is correct in principle, it is inapposite to our analysis because the evidence
was not limited to appellant’s intent to pull the trigger of a firearm.  The
evidence showed that appellant fired his handgun twice while aiming at the head
and torso of a victim standing less than two feet away.  Based on this
evidence, a rational trier of fact could have found beyond a reasonable doubt
that appellant intentionally caused Jorge Cano’s death.  See Hooper
v. State, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) (“[D]irect evidence of
the elements of the offense is not required.  Juries are permitted to make
reasonable inferences from the evidence presented at trial, and circumstantial
evidence is as probative as direct evidence in establishing the guilt of an actor.
Circumstantial evidence alone can be sufficient to establish guilt.”). 
Accordingly, appellant’s first issue is overruled.  

III. Ineffective Assistance of Counsel

            In his third issue, appellant
complains about ineffective assistance of counsel.

A.
Standard of Review and Applicable Law

A claim of ineffective
assistance of counsel entails two components.  State v. Morales, 253
S.W.3d 686, 696 (Tex. Crim. App. 2008).  Appellant must establish both that his
trial counsel performed deficiently and that the deficiency operated to
prejudice him.  Id.  In evaluating the first component, reviewing courts
must not second-guess legitimate strategic or tactical decisions made by trial
counsel in the midst of trial, but instead “must indulge a strong presumption that
counsel’s conduct falls within the wide range of reasonable professional
assistance.”  Strickland v. Washington, 466 U.S. 668, 689 (1984).  This
means that unless there is a record sufficient to demonstrate that counsel’s
conduct was not the product of a strategic or tactical decision, a reviewing
court should presume that trial counsel’s performance was constitutionally
adequate “unless the challenged conduct was so outrageous that no competent
attorney would have engaged in it.”  Goodspeed v. State, 187 S.W.3d 390,
392 (Tex. Crim. App. 2005).  

B.
Discussion

            Appellant argues that he was
denied effective assistance of counsel based on the failure of his trial
counsel to (1) request a jury instruction on voluntary action, (2) object to
the introduction of the four weapons police discovered in an apartment used by
appellant and others, and (3) file a motion to disclose the identity of the
Crime Stoppers informant.   As set forth below, the record is not sufficient to
overcome the presumption that trial counsel’s performance was constitutionally
adequate. 

1.
Jury Instruction on Voluntary Action

            In the first part of his issue,
appellant complains that trial counsel’s performance was deficient because
counsel failed to request an instruction on voluntary action.  To prevail on
this complaint, appellant must show that he was entitled to the instruction.  Fuentes
v. State, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999).  Involuntary conduct
is a defense to prosecution.  See Tex.
Penal Code Ann. § 6.01(a) (West 2003) (“A person commits an offense only
if he voluntarily engages in conduct including an act, an omission, or
possession.”).  “When a person claims the involuntary-act defense he is
conceding that his own body made the motion but denies responsibility for it.” 
Rogers v. State, 105 S.W.3d 630, 639 n.30 (Tex. Crim. App. 2003). 
“Voluntariness,” within the meaning of section 6.01(a), refers only to one’s
own physical body movements. Id. at 638. “If those physical movements
are the nonvolitional result of someone else’s act, are set in motion by some
independent non-human force, are caused by a physical reflex or convulsion, or
are the product of unconsciousness, hypnosis or other nonvolitional impetus,
that movement is not voluntary.”  Id.  “[A]n instruction on
voluntariness is necessary only if the defendant admits committing the act
charged and seeks to absolve himself from criminal responsibility for engaging
in the conduct.”  Bell v. State, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994,
no pet.).  Thus, in one decision, the court of appeals held that a defendant
who claimed that his firearm accidently discharged was not entitled to a jury
instruction on voluntary action, reasoning that “Appellant’s testimony that he
did not touch the trigger does not show that he was the passive instrument of
another’s act, i.e., that, somehow, his finger had been made to exert the
requisite [five-and-one-half] pounds of force to squeeze the trigger and fire
the gun.”  Trujillo v. State, 227 S.W.3d 164, 169-170 (Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d).

             Our review of the record does
not support appellant’s characterization of the evidence that arguably raised
the defensive issue of involuntary conduct.  Although appellant maintains that
the shooting took place during a struggle for control of appellant’s handgun,
the witnesses who were closest to the shooting, such as the passengers in
appellant’s vehicle, did not testify that a struggle for control of the weapon
was taking place when the shooting occurred.  Moreover, the testimony of the
forensic pathologist established that the victim was not holding appellant’s
handgun and was up to two feet away when the shooting occurred.  Appellant did
not testify at trial and has never admitted to firing the shots that killed
Jorge Cano.  See Bell, 867 S.W.2d at 962 (“[A]n instruction on
voluntariness is necessary only if the defendant admits committing the act
charged. . . .”).  To the extent that appellant sought to raise the defensive
issue of involuntary conduct at trial, it was necessary for him to offer some
evidence proving that “he was the passive instrument of another’s act.”  Rogers,
105 S.W.3d at 640.  Because there was no such evidence, appellant was not
entitled to a jury instruction on the defensive issue of involuntary conduct. 
Accordingly, we overrule appellant’s complaint of ineffective assistance of
counsel based on the failure to request a jury instruction on involuntary
conduct.

2.
Objection to Weapons Offered as Evidence

In the second part of his
issue, appellant complains about his trial counsel’s failure to object to the admission
of the four weapons police found in the apartment used by appellant and others. 
“When an ineffective assistance claim alleges that counsel was deficient in
failing to object to the admission of evidence, the defendant must show, as
part of his claim, that the evidence was inadmissible.”  Ortiz v. State,
93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (citing Jaubert v. State, 74
S.W.3d 1 (Tex. Crim. App. 2002)).  According to appellant, trial counsel should
have objected on the grounds that the weapons were not relevant, merely showed
character in conformity and a propensity for crime, and to the extent relevant,
if any, their probative value was outweighed by their unfairly prejudicial
nature.  See Tex. R. Evid.
402, 403(b), 404.  We disagree.

The Hi-Point 9mm handgun
recovered from the apartment was the same type of gun that fired the fatal
shots that killed Jorge Cano, matched the description of the gun witnesses saw
appellant holding at the time of the shooting, and had appellant’s blood spilled
on it, consistent with the injuries sustained by appellant immediately prior to
the shooting.  There would be no merit to a challenge to the admissibility of
this evidence based on relevance, unfair prejudice, or action in conformity
with character.  The same is true of the second handgun recovered from the
apartment, which matched the description of the gun witnesses saw Rafael
Rodriguez holding at the time of the shooting.  Although appellant attempted to
create reasonable doubt about his guilt based on Rodriguez’s participation in
the shooting, the forensic evidence established conclusively that the handgun
did not fire the fatal shots that killed Jorge Cano.  Appellant has not
satisfied the burden of establishing that this evidence was inadmissible.  See
Ortiz, 93 S.W.3d at 93.  

Finally, with regard to the
two remaining weapons, we note that the trial court has discretion to admit or
exclude evidence.  Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim.
App. 1990).  Although it is possible that the trial court may have sustained an
objection to the admissibility of one or both of the weapons, the record does
not establish that “counsel’s representation was so lacking in tactical or
strategic decisionmaking as to overcome the presumption that counsel’s conduct
was reasonable and professional.”  Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002); see also Mata v. State, 226 S.W.3d 425,
430 (Tex. Crim. App. 2007) (“The lack of a clear record usually will prevent
the appellant from meeting the first part of the Strickland test, as the
reasonableness of counsel’s choices and motivations during trial can be proven
deficient only through facts that do not normally appear in the appellate
record. It is not sufficient that the appellant show, with the benefit of
hindsight, that his counsel’s actions or omissions during trial were merely of
questionable competence.”).  Accordingly, we overrule appellant’s complaint of
ineffective assistance of counsel based on the failure to object to the
admissibility of the weapons.  

3.
Identity of Crime Stoppers Informant

In the third part of his
issue, appellant complains that he was denied effective assistance of counsel
by the failure of his trial counsel to file a motion to disclose the identity
of the informant who supplied information about appellant’s involvement in the
shooting to Crime Stoppers.  According to appellant, the information the Crime
Stoppers informant provided the police was significant and important because
the information was used by investigators to focus their investigation on
appellant and to support and obtain the search warrants for the weapons and
ammunition that was eventually secured.  Appellant argues that “the disclosure
of the identity of the informer (and the information he provided investigators)
was pivotal, so that Appellant could have an opportunity to confront the
informer and conduct a meaningful cross-examination.”  

Appellant’s complaint
assumes the existence of unspecified exculpatory evidence that would have been
discovered through the disclosure of the identity of the Crime Stoppers
informant.  See Narvaiz v. State, 840 S.W.2d 415, 434 (Tex. Crim. App.
1992) (holding counsel not ineffective for failing to present more mitigating
evidence in capital murder trial when defendant did not specify what evidence
should have been presented); see also Bone, 77 S.W.3d at 835 (“If
a reviewing court can speculate about the existence of further mitigating
evidence, then it just as logically might speculate about the existence of
further aggravating evidence. Ineffective assistance of counsel claims are not
built on retrospective speculation; they must be firmly founded in the record.
That record must itself affirmatively demonstrate the alleged
ineffectiveness.”).  This speculation is inappropriate, especially given the
State’s obligation to disclose exculpatory evidence.  See Brady v. Maryland,
373 U.S. 83 (1963) (due process violated by the government's suppression of
exculpatory evidence); Bagley v. United States, 473 U.S. 667 (1985) (Brady
applies to impeachment evidence).  Accordingly, we overrule appellant’s
complaint of ineffective assistance of counsel based on failure to file a
motion to disclose the identity of the Crime Stoppers informant.  

IV. Conclusion

            The judgment of the trial court
is affirmed.  

 

­                                                                                                __________________

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not publish. 

Tex. R. App.
P.
47.2(b)

Delivered and filed the 

31st day of August, 2011.